Thurman, J.
I am unable to concur in the opinion just pronounced. I think the motion of the appellant, for leave to file a new bond, ought to be granted ; and that, in default of his giving such bond, the motion of the appellee to dismiss the appeal ought to be sustained. In order to explain my views, it is necessary to review in some detail our legislation and decisions upon the Subject of appeals. Prior to the act of March 9, 1835, Swan’s Stat. 686, it was uniformly ^decided that a strict compliance with the conditions upon which an appeal was allowed was necessary to give the appellate court jurisdiction. No matter by whose fault or negligence the-error or omission occurred, if the statute had not complied with the appeal was dismissed. For, the jurisdiction depending on compliance, a default, however occurring, could not be Avaivcd or overlooked. Thus, in Wilson v. Holeman, 2 Ohio, 253, in which the appeal was dismissed upon two grounds, one of them was that the bond did not set out the suit with sufficient precision to determine with certainty to what case it was intended to apply. The court, in sustaining this exception, said : “As this suit, therefore, is not within the original jurisdiction of this court, and the steps required .in order to give us appellate jurisdiction have not been taken, the appeal must be dismissed.”
In Oliver v. Pray, 4 Ohio, 175, it was held that an appeal was properly dismissed when the appeal bond was in double the amount of the judgment, exclusive of costs. No question was made but that the penalty of the bond was sufficient to protect the adverse party. But the fatal objection was that the law had not been complied with, and, therefore, the appellate court had no jurisdiction. The statute required the penalty to be double the amount of the judgment, including costs. A bond in a less amount could not be of any avail. Now, it is to be especially noted that the defect in the bond occurred, in the opinion of the court, from no negligence *153 or fault of the party giving it; for it is expressly declared that no fault or negligence could be imputed to him, and that he acted “ with good faith, and with all reasonable diligence.” The error was “ occasioned by the mistake or oversight of the clerk.” So the court distinctly hold, and yet the appeal was dismissed, and tho party driven to a court of equity to get a new trial. I dwell on this, because in the present ease great stress is laid on the argument that the omission to fix the penalty of the bond was a fault of the common pleas, and not of the appellant. *T do not so consider it; but if it were so, I do not see how the appellant is aided by it. But of this hereafter.
In the case just cited the court said : “ On motion of the respondent, the supremo court quashed the appeal upon the ground that the bond was not executed in conformity with the provisions of tho statute. The amount of the penalty was supposed to be matter of positive law, and one of the requisites upon which the appellate jurisdiction of the court depends. To effect an appeal tho provisions of the statute no doubt must be substantially complied with. It can not be done without the notice is entered of record at the term in which the judgment or decree was rendered. So the appeal must fail if the bond should not bo executed within the time prescribed by the act, and it has been several times decided that the penalty'of the bond must be double the amount of the judgment or decree, including the costs. The party has his right of appeal upon complying with the conditions annexed by the statute. His right is lost by omitting or neglecting to perform any of the conditions, and tho appellate jurisdiction of this court altogether ceases over the cause. With regard to notice and filing the bond within thirty days after the rising of the court, the decisions have been uniform that the omission in either case ousts this court of its jurisdiction. It is undoubtedly within the p>owers of the legislature to attach all reasonable conditions to the right of appeal, and thus place a limitation upon tho appellate jurisdiction of the court. The cause is not appealed without the party performs the conditions required by statute; and when he neglects to do so, to entertain jurisdiction would be mere usurpation of power.”
The same point, to wit, that a bond in less than double tho amount of tho debt and costs, would not sustain an appeal, was again decided in Bliss v. Bong, 5 Ohio, 276. The objection was not taken until after the jury had been sworn and part of the testi *154 mony given in the appellate court; yet,'as it wont to the jurisdiction, it was not deemed too late. The force of the decision is not weakened by the *faet that the cause was subsequently reinstated on the docket, it being shown to the court that an error had occurred in taxing the costs below, and that the penalty of the bond was in truth large enough.
In Torbet v. Coffin, 6 Ohio, 33, the facts were these: Coffin recovered judgment against Torbet before a justice. Torbet in due time gave security for an appeal. At the second term of the common pleas thereafter, he asked leave to docket the appeal and proved that the omission to docket it at the first term was in consequence of an agreement with the plaintiff that if it was not docketed ho would discontinue the suit or cancel the judgment. The court allowed it to be docketed; the parties filed pleadings, made up an issue, and went to trial, and a verdict and judgment were given for the defendant. The supreme court reversed the judgment upon the ground that the common pleas had no jurisdiction of the case, the appeal not having been docketed at the first term.
These several rulings were approved in Bradley v. Snoath, 6 Ohio, 490, in which it was held that, “ if upon appeal from the common pleas to the supreme court, no bond is taken, the jurisdiction of the supreme court does not attach, and exception may bo taken by the appellee after trial and verdict against him.” A compliance with the requisitions of the statute, said the eourt, was necessary to vacate the judgment of the court of common pleas, and, unless it were vacated, the jurisdiction of the supreme court could not attach.
Bo stood the law when the before-mentioned statute of 1835 was enacted. The appellate court had no jurisdiction in the absence of any of the pro-requisites prescribed by the statute. It was of no importance whose fault or negligence it was that occasioned the defect, whether it was the appellant’s own default,-or, as in Oliver v. Pray, the clerk’s; or, as in Torbet v. Coffin, the result of the bad faith of the appellee; the defect, if it existed at all, was fatal. For positive statute law required certain conditions precedent to the existence of the jurisdiction, and it was not the province of the *court to alter or modify that law. But the act of 1835 made an important change. By its fourth section it provided :
“ That no exception to an appeal bond, in .any case removed by *155 appeal from a justice of the peace to the court of common pleas, or from the court of common pleas to the supreme court, shall be taken, unless the same be done at the term of the court in which the appeal is entered; and the failure to take such exceptions at that time shall be considered as a waiver of all exceptions. And if, upon exception taken, the bond shall be found to be defective, either in form or in any other respect, the appellate court may order a new bond to bo given, with security to the satisfaction of the clerk of said court; and if such new bond be given according to said order, said appeal shall not be dismissed, but the appellate court shall proceed to hear and determine the cause in the same manner as if the bond originally given had been sufficient; provided, that nothing in this section contained shall be construed to extend to bonds not executed within the time limited by law for giving appeal bonds.” Swan’s Stat. 686.
The effect of this statute was to confer jurisdiction upon the appellate court, although the appeal bond might be defective, provided that no objection was made at the first term, or, if then made, that a new and sufficient bond was given. But it was not designed to give validity and sufficiency to a bond not executed in compliance with the law. On the contrary, the appellee’s right to except to such a bond and to ask that the appeal be dismissed, is carefully preserved, limited only as to the time within which the exception shall be taken, and by the appellant’s counter right to give a new bond. The court are authorized to order the new bond, “and if such new bond be given according to said order,” says the statute, “said appeal shall not be dismissed, but the appellate court shall proceed to hear and determine the cause in the same manner as if the bond originally given had been sufficient.” It is only upon the giving of such new bond that the court is empowered to proceed. Before the statute, it could not proceed at all. It had no jurisdiction *and a valid objection to jurisdiction could not be waived. But the statute came and authorized it to be waived, and enacted that it should be considered as waived if not made at the first term, and that if then made it might be obviated by a now bond. That being given, the jurisdiction becomes as complete as if the original bond had been sufficient. But that not being given, and the exception being taken in time, the appeal must be dismissed. Such, I understood to be the meaning of the law.
In Hays v. Armstrong, 7 Ohio, pt. 1, 247, a restrospective oper *156 ation was given to this act, and an exception to a bond was considered as too late, because no.t taken at the first term, although the statute was not enacted until after that term.
In Saterlee v. Stevens, 11 Ohio, 420, the bond was defective and the objection made in time. The court did just what I think should be done in the present case. They required the appellee to give a bond.
That the same strictness established by these repeated decisions yet obtains in cases to which the act of 1835, does not apply, will be seen by reference to Moore v. Brown, 10 Ohio, 197, and Landon v. Reed, idem, 502. In the first of these eases, it was held that a notice of appeal, marked by the court on its docket but not carried into the journal, is not a compliance with the statute requiring such notice to be entered on the record ; nor can the omission be cured by a nunc pro tunc order at a subsequent term. In the latter case it was decided that where a nunc pro tunc judgment was entered in the common pleas, at July term, to take’effect as of the April term preceding, an appeal bond filed within thirty days after the July term was not within time. And in both cases the appeals were quashed.
The conditions on which appeals may be taken to the district court are prescribed by statute, 50 Ohio L. 93. The second section of the act provides that the parties desirious of appealing, shall, at the term of the court in which the judgment or decree is rendered, enter on the records of the court ^notice of such intention, and shall, within thirty days after the rising of the court, give bond, with one or more sufficient sureties to be approved by the clerk of the court, or any judge thereof, in the penalty and with the condition hereinafter provided. The third section prescribes the penalty and condition of the bond, and to whom it shall be payable. In respect to the penalty, the provisions are that it shall be in double the amount of the judgment or decree, where that is for the payment of money only, and that in all other cases, including cases in which the judgment or decree is for nominal damages and costs, or for costs only, ‘‘the court shall, at the time of the rendition of the judgment or decree, ascertain and fix the penalty of the appeal bond, to be given iii the event of an appeal, at such reasonable amount as shall in the opinion of the court be sufficient to cover any probable loss, damage, or injury, which the other party or par *157 ties, may sustain by the delay, and the costs and damages which may be awarded in the appellate court.”
The ease before us is undeniably one in which the appeal bond should be in a penalty fixed by the court. But no such bond was given. Owing to some cause unknown to us, probably to the fact that the statute had not been published, the court fixed no penalty. The appellant fixed it himself when he gave the bond, or the clerk did so. In eith'er event the bond is not a compliance with the law, and I know of no power possessed by any court, to allow a substitute for what a statute positively requires ; what causes may be appealed, and upon what terms, it is for the legislature to say, and when it has spoken, the courts must obey. If, owing to omissions, or unwise enactments, in the law, or to their late publication, cases of hardship arise, the fault, if there is one, is not the fault of the courts, nor is it any part of their province to provide remedies for such evils. Many cases, no doubt, would have been appealed, which have not been, had the law been known throughout the state in time. But not being known, notice of appeal was not entered on the record, and the right of appeal was lost. Eor it is not pretended *that in such a case there could be an appeal, even had the party seeking it given the most ample bond. And yet he would have been quite as diligent as was the appellant in this ease, and would have quite as meritorious a cause. It will not do, it seems to me, to say that the omission to fix the penalty was the default of the court. Suppose it were so, how could that make a bond valid that is not in compliance with the statute ? How could that authorize a substitute for what is required by the statute as a condition precedent to an appeal ? We have seen that, in Oliver v. Pray, the appellant had used all due diligence, and the error was by the fault of the clerk, yet the appeal was dismissed. And in Torbet v. Coffin, the omission was procured by the appellee, yet it was held fatal. Eor the question in a court of law is not whether there has been diligence or negligence, but whether the statute has been complied with. It is only upon compliance that an appeal is authorized, and therefore the fact of compliance, or non-compliance, settles the rights of the parties. So it was uniformly held, under former laws, as the cases cited fully show, and there is nothing in the existing statute to alter the rule of decision.
But were it otherwise, I wholly dissent from the proposition that the omission to fix the penalty was the default of the court. It is *158 said, that this must bo so, because the statute provides that, “ tho court shall, at the time of the rendition of the judgment or decree, ascertain and fix the penalty of the appeal bond, to be given in the event of an appeal.” A very narrow construction is given to the word “ time,” which restricts it to the instant of the rendition of tho judgment. I do not think this the true construction. The whole term is, for certain purposes, regarded as but one day, and I have no idea that an order fixing the penalty would be hold nugatory if made subsequent to the rendition of the judgment, but at the same term. Be this, however, as it may, neither construction has anything to do with tho question, whether the court is sua sponte to fix the penalty, or whether it is only called upon to act when the party desirous of an appeal asks *it so to do. Nor are the terms of the statute so imperative, in my judgment, as to require the court to fix a penalty in every case, whether there is an intention to appeal or not. I suppose that it is where only notice of appeal is given that a penalty must be fixed; and as the giving of this notice is tho act of the party, and requires no judicial action, and as no court, however diligent, can always bear in mind the cases in which it is given, and as the fixing of the penalty is a judicial act requiring judgment and discretion, and both parties are interested in it, it seems to mo th at the proper course is, for the party seeking an appeal to move the court to fix tho penalty, and for the adverse party to have an opportunity to make such reasonable suggestions as may bo necessary.
It is said, however, that, under the amendment of March 12,1845, (48 Ohio L. 125) to the eliancoi’y practice act, which amendment provided that the court should, in certain cases, direct the amount and condition of the appeal bond, it was held by the supreme court on the circuit, that a pai'ty did not lose his right of appeal by' tho fact that the penalty was not thus fixed. But no such decision appears to have been made by tho court in bank, nor are we referred to any circuit decisions in which it was expressly ruled that tho appeal would be sustained, without a new bond being given, under the act of 1835. We have but a vague account of these circuit decisions, for no one of them is reported; and, so far as I can learn, the question whether a new bond was not necessary, was not made. Bo this, however, as it may, they are not, although entitled to respect, binding as authority; and I can not surrender my clear convictions to precedents so doubtful and indecisive. The decisions of the court *159 in bank, already referred to, afford a firm ground on which to stand, and no circuit rulings that are opposed to them ought to prevail.
In any point of view, then, in which I can regard this case, the motion of the appellee ought to be sustained, unless the act of 1835 is yet in force, and a now bond be given in ^pursuance of it. I think it is in force, and that such bond may be given. I am inclined to the opinion that it, and all the other practice acts, were saved by the constitution itself, and made applicable to the existing courts of the proper jurisdiction. But if this is not so, I am clear that it governs the present courts by force of the act of April 30, 1852. 50 Ohio.L. 102. If the constitution have not the effect I have supposed, the same result was accomplished by the 18th section of the act organizing the courts (50 Ohio L. 71), and continued by the above mentioned act of April 30,1852.
I think, therefore, that the appellee’s motion for leave to give a new bond should be granted. For, as I have said, I consider the present bond of no validity, and the act of 1835 does not take away the right to except to it. And having been excepted to in time, the appeal can not be saved under that act without a now bond being given. The act provides that if a new bond be given the appeal shall not be dismissed. The converse is true, that if it be not given, the appeal must fail.
I would remark that in the case of Ratcliff v. Beck, W. L. Jour. November, 1852, page 72, cited by counsel, no application was made for leave to give a new bond. Had it been made I have no doubt it would have been granted. But not being made the appeal was dismissed.